IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2020

**JOEY LEE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-02887          W. Mark Ward, Judge**

_____

**No. W2019-00691-CCA-R3-PC**

_____

The Petitioner, Joey Lee, appeals from the Shelby County Criminal Court's denial of post-conviction relief from his conviction for aggravated robbery. On appeal, the Petitioner argues that his trial counsel provided ineffective assistance in failing to challenge the victim's identification of the Petitioner after she sat next to him in court at a suppression hearing without recognizing that he was one of the men who robbed her and in failing to challenge the prosecutor's actions, in suggesting to the victim that she was sitting next to her aggressor, as prosecutorial misconduct. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Genna M. Lutz, Memphis, Tennessee, for the Petitioner, Joey Lee.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION**

The Shelby County Grand Jury indicted the Petitioner and his codefendant, Alex Goodwin, for one count each of aggravated robbery of Goodwin's girlfriend, Latasha Jackson. State v. Alex Goodwin and Joey Lee, No. W2015-00813-CCA-R3-CD (C), 2017 WL 2472371 (Tenn. Crim. App. June 7, 2017), perm. app. denied (Tenn. June 7, 2017). This Court summarized the evidence on the Petitioner's direct appeal as follows:

The victim, Latasha Jackson, had been in "a casual relationship" with [codefendant] Goodwin on Facebook for approximately a month before the instant offense. The first time she met [codefendant] Goodwin in person was the day after she told him she had cashed her income tax check. She spent that day running various errands with [codefendant] Goodwin, who was texting someone on his cell phone the entire time he was with the victim. [Codefendant] Goodwin ultimately directed the victim to drive to a certain location. Once there, two men, one armed with a gun and later identified as [the Petitioner], approached the victim and demanded money. The men ultimately ran off, taking the victim's money, purse, jacket, and cell phone. Based on "suspicious statements" provided by [codefendant] Goodwin to the police, he was developed as a suspect in the robbery and charged with the instant offense. [The Petitioner] was indicted following review of his cell phone communications with [codefendant] Goodwin on the day of the offense and the discovery of the victim's cell phone in his bedroom.

Id. at * 1. The trial court conducted multiple suppression hearings in this case, one of which took place on May 21 and May 22, 2014, which is the subject of this appeal. Id. at *2. The victim testified at that hearing. Id. After a trial, the jury convicted the Petitioner as charged, and the trial court sentenced him to ten years' imprisonment. Id. at *1, *9. This court affirmed the Petitioner's convictions on direct appeal, and the Tennessee Supreme Court denied permission to appeal. Id. at *1.

On June 6, 2018, the Petitioner filed a timely petition for post-conviction relief, alleging several instances of ineffective assistance of counsel. On November 30, 2018, the Petitioner filed an amended petition for post-conviction relief, alleging additional instances of ineffective assistance and alleging an instance of prosecutorial misconduct. On March 1, 2019, the post-conviction court held a hearing on the Petitioner's petition for post-conviction relief.

At the post-conviction hearing, the Petitioner presented proof on three of his claims of ineffective assistance of counsel; however, because the Petitioner only appealed one of these issues, we will only address the proof related to that issue. The Petitioner testified that his trial took place from February 9-13, 2015. He was also present for a suppression hearing on May 21-22, 2014. The Petitioner was not in custody for this suppression hearing. He stated that he arrived in the courtroom "before nine sometime." He said that he sat on the second row on the right side of the courtroom facing the front. The courtroom was crowded when he arrived. He stated,

Toward the end of Court . . . as the docket was being called and court was clearing out, [the victim] came in and sat directly next to me. I didn't even notice [the victim]. I ain't [sic] know it was her or nothing like that until the prosecutor with the dark hair, he called [her] up to the front and let her know she was sitting next to the man who supposedly robbed her.

According to the Petitioner, the prosecutor asked the victim, "[W]hat are you doing[,]" and "[D]o you know who you [are] sitting next to," and he stated, "That's who robbed you." The prosecutor then instructed the victim to sit on the opposite side of the courtroom, which she did. The Petitioner believed that thirty minutes to an hour elapsed between the time that the victim sat next to him and the beginning of the suppression hearing. He said that the courtroom began to empty as his hearing approached. The Petitioner stated that the victim looked at him multiple times when she was sitting next to him. The victim identified the Petitioner and codefendant Goodwin at the suppression hearing. The Petitioner described his physical appearance at the suppression hearing as having a "low haircut, wasn't wearing glasses, no beard. About the same build as I am now." He stated that his appearance was the same on the date of his trial. The Petitioner did not see the victim at any additional hearings before his trial, and he did not see her outside of the courtroom.

On cross-examination, the Petitioner testified that the victim made an identification of him prior to his trial, as the investigation was beginning. He affirmed that he spoke to trial counsel about this interaction. He also confirmed that the victim was dating his codefendant at the time she was robbed.

Trial counsel testified that she had been practicing law for over 20 years at the time of the Petitioner's trial. Her practice consisted entirely of criminal work in state and federal court. She stated that she had participated in 25 to 30 criminal trials at the time of the Petitioner's trial, ranging from misdemeanor trials to capital murder trials. Trial counsel said that the situation at the suppression hearing with the victim occurred "pretty much" as the Petitioner described, although she was not present in the courtroom at the time. She said that the Petitioner told her about this occurrence. She believed that she and the prosecutor brought this up with the trial court. However, she stated, "But I was not concerned with tainting any identification because [the victim] had already identified [the Petitioner] during a photo lineup during the police investigation before the indictment or anything like that." She believed that the prosecutor told the victim that she was sitting next to one of the defendants and did not specify the Petitioner by name. She could not recall how many people were in the courtroom at the time of the Defendant's suppression hearing.

Trial counsel stated that there was "other evidence in the case that firmly supported the identification of the [Petitioner] as having been involved in the case[,]" including the recovery of the victim's cell phone from the Petitioner's bedroom and text messages between the Petitioner and his codefendant, wherein they discussed robbing the victim. On cross-examination, trial counsel said that it did not concern her at the time that the victim sat next to the Petitioner at the suppression hearing even though she had previously identified him as one of the men who robbed her. She only knew the circumstances surrounding this event as the Petitioner told them to her. On March 21, 2019, the post-conviction court entered a written order denying relief. The Petitioner filed a notice of appeal on April 22, 2019.

## ANALYSIS

The Petitioner argues that trial counsel was ineffective for failing to address the actions of the prosecutor at the suppression hearing and for failing to move to suppress any subsequent in-court identification of the Petitioner by the victim. He asserts that the State's conduct at the suppression hearing was "so suggestive as to lead to a substantial likelihood of irreparable misidentification." He continues, "It strains credibility to think that the victim of a violent crime would choose to sit beside not only a participant, but the gunman, if she was in fact able to recognize him as one of her attackers." The Petitioner asserts that he was prejudiced by trial counsel's actions. The State contends, "The post-conviction court properly determined that [trial counsel's] performance was not deficient, noting that she recognized the issue and found that any challenge to [the victim's] identification of the [P]etitioner would be fruitless because an earlier photo identification had been made and other evidence tied the [P]etitioner to the commission of the robbery." We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no

- 4 -

presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

In denying the petition for post-conviction relief, the post-conviction court held as follows:

> Both Petitioner's pro se and his Amended Petition, filed with aid of counsel, allege in true "shotgun" form a multitude of allegations, for most of which no evidence or argument was presented in the post-conviction evidentiary hearing. As previously mentioned, the failure to present evidence on an allegation raised in a petition for post-conviction relief results in a waiver of that allegation. Montreal Lyons v. State, No. W2010-00798-CCA-R3-PC, 2011 WL 3630330 (Tenn. Crim. App. Aug. 18, 2011).

> Petitioner contends that the fact that an Assistant District Attorney involved in prosecuting his case told the victim prior to a pre-trial motion hearing that she was sitting in the courtroom next to one of the persons who robbed

- 5 -

her was prosecutorial misconduct; and that counsel's inaction with regard to the matter constituted ineffective assistance of counsel. With regard to "prosecutorial misconduct" this Court does not believe that the actions of the prosecutor in this case as described in the evidentiary hearing rise to the level to constitute such misconduct. More importantly, any issue with regard to this matter should have been raised at trial and on direct appeal. It was not. Thus, it has been waived. As far as linking this claim to ineffective assistance of counsel, [trial counsel] testified that she was not concerned about it since (1) [the victim] had already identified [the Petitioner] in a photo spread; (2) she actually knew and was dating [the codefendant]; (3) the victim's cell phone was found in [the Petitioner's] bedroom; (4) that cell phone had [the Petitioner's] sim card inserted in it; and (5) text messages linked [the Petitioner] and [the codefendant]. In this posture, Petitioner has failed to show any "deficiency" of performance or "prejudice."

The record does not preponderate against the findings of the post-conviction court. Although the Petitioner testified that he told trial counsel that the victim sat next to him at the suppression hearing, and the prosecutor had to inform the victim of this, trial counsel explained her reasoning for not challenging the subsequent in-court identification of the Petitioner by the victim as unduly suggestive. By its conclusion, the trial court accredited the testimony of trial counsel, finding that the evidence presented at the Petitioner's trial supported his identity as the perpetrator. This court does not re-evaluate factual determinations made by the post-conviction court. Vaughn, 202 S.W.3d at 115. Accordingly, the Petitioner has failed to prove by clear and convincing evidence that trial counsel was ineffective. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger, 279 S.W.3d at 293-94. He is not entitled to relief.

## CONCLUSION

Based on the aforementioned authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE